**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.: PWG-14-2049** |
| | * | |
| **SHIVA FOODS, INC.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |
| | ***** | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses Plaintiff's Motion for Judgment by Default (ECF No. 12) ("Plaintiff's Motion").  Pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, the Honorable Paul Grimm referred this matter to the undersigned for making a Report and Recommendation concerning default judgment and/or damages.  For the reasons stated herein, I recommend the Court **GRANT** Plaintiff's Motion and award Plaintiff $2,000.

I.       **Factual Background**

On February 27, 2012, J&J Sports Productions, Inc., ("Plaintiff") purchased the exclusive television distribution rights to broadcast a program featuring a boxing match between Manny Pacquiao and Timothy Bradley (the "Program").  Pl.'s Compl. 3, ECF No. 1.  Plaintiff subsequently entered sublicensing agreements with commercial establishments authorizing those entities to exhibit the Program to their patrons.  *Id.*

Whitney Coleman, a private investigator, declared in an affidavit that on June 9, 2012, he entered the establishment of Shiva Foods, Inc., (t/a Stonefish Restaurant and Bar) (the

1

"Defendant") and observed the establishment showing the Program on three television screens.

Affidavit of Whitney Coleman 1, ECF No. 12-3 (hereinafter "Coleman Aff."). Five televisions

at Defendant's establishment were also showing a basketball game. *Id.* Mr. Coleman estimated

that as many as 129 people were at the establishment. *Id.* Mr. Coleman also estimated that the

maximum capacity of the establishment was 215 people. *Id.* He was not charged a cover when

he entered. *Id.*

On June 25, 2014, Plaintiff filed its Complaint alleging that Defendant violated

provisions of the Sections 553 and 605 of the Federal Cable Act when it showed the Program

without authorization. Pl.'s Compl. 2-5; 47 U.S.C. § 553; 47 U.S.C. § 605. Plaintiff also alleges

that Defendant committed the tort of conversion. Pl.'s Comp. 5. Because Defendant did not file

an answer to Plaintiff's Complaint, the Clerk entered a default on September 23, 2014. *See* Fed.

R. Civ. P. 55(a). Plaintiff seeks $151,500, but does not seek attorney's fees. Pl.'s Motion 2.

## II.      Legal Background

In considering a motion for default judgment, the Court accepts as true the well-pleaded

factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253

F.3d 778, 780 (4th Cir. 2001) (citation omitted). Still, "acceptance of [the] undisputed facts does

not necessarily entitle [the non-defaulting party] to the relief sought." *Id.* at 780–81. To

determine the proper measure of damages, the Court must make an independent factual inquiry.

*See, e.g., S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). While the Court may

conduct an evidentiary hearing to determine damages, it is not required to do so "if the record

supports the damages requested." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794-95

(D. Md. 2010). The Court may review "definite figures contained in the documentary evidence

or in detailed affidavits." *Eason v. Merrigan*, Civil No. DKC-2003-0933, 2004 WL 903756, at

*1 (D. Md. Apr. 28, 2004) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prod.*, 722

F.2d 1319, 1323 (7th Cir. 1983)).  Courts determining damages without a hearing tend to rely on

evidence with strong indicia of trustworthiness (such as signed affidavits and depositions taken

under oath).  *See, e.g.*, *Transportes Aereos De Angola v. Jet Traders Inv. Corp.*, 624 F. Supp.

264, 266 (D. Del. 1985) (requiring evidence that is "an adequate substitute for live testimony");

*Phila. Indem. Ins. Co. v. Emerson*, Civil No. ESH-14-301, 2015 WL 1359681, at *2 (D.D.C.

Mar. 24, 2015) (relying on an affidavit "which attaches proof as to the amount of damages in the

form of copies of checks from plaintiff to the insured"); *Law Office G.A. Lambert & Assoc. v.

Davidoff*, Civil No. CKK-13-1734, 2014 WL 4056518, at *5 (D.D.C. Aug. 15, 2014) (relying on

an affidavit and "billing records" and reducing the award where the damages claimed were "not

supported in [their] entirety by the evidence submitted").

III.   **Discussion**

A.  **Defendant is Liable for Violating Either Section 553 or Section 605.**

Section 553 prohibits the unauthorized interception or receipt of certain "cable"

communications.  47 U.S.C. § 553.  Section 605 proscribes the unauthorized interception or

receipt of certain "radio" communications.  47 U.S.C. § 605.  In its Complaint, Plaintiff does not

specify how Defendant intercepted the Program.  That omission is not fatal as "[t]he complaint

need not specify the precise method of interception, as pleading in the alternative is permitted" at

this stage.  *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, Civil No. CCB-11-3272,

2012 WL 5879127, at *4 (D. Md. Nov. 19, 2012).  Instead, Plaintiff can prove that Defendant

violated either Section 553 or Section 605 by showing that Defendant "intercepted and displayed

the Program at its establishment, without authorization from [Plaintiff], on a particular date and

at a particular time."  *Id.*

By this test, I believe Plaintiff has proven a violation of either Section 553 or Section 605. Plaintiff has alleged, via Mr. Coleman's affidavit, that Defendant displayed the Program at its establishment on June 9, 2012, at or around 9:50 p.m. Taking the factual allegations as true, I believe Plaintiff has proven that Defendant "intercepted and displayed the program at its establishment" "on a particular date and at a particular time." *Joe Hand*, 2012 WL 5879127, at *4. Plaintiff alleges that Defendant showed the Program without authorization. Pl.'s Compl. 3. I believe that taking this well pleaded factual allegation as true, Plaintiff has shown that Defendant showed the Program "without authorization." *Joe Hand*, 2012 WL 5879127, at *4. As such, I believe Plaintiff has proven a violation of either Section 553 or Section 605.

However, Plaintiff cannot recover under both provisions of the Federal Cable Act as courts "should preclude double recovery." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (citation omitted). Instead, as this Court has done previously, I suggest this Court allow Plaintiff to recover "under section 605 alone, on the ground that it authorizes a greater award than section 553." *J&J Sports Prods., Inc. v. Rumors, Inc.*, Civil No. CCB-14-2046, 2014 WL 6675646, at *2 (D. Md. Nov. 21, 2014).

Regarding Plaintiff's claim for conversion, where parties claim damages under Section 605 and for conversion, "[c]ourts have similarly not allowed recovery for [the] claims of conversion as they would not exceed those under §§ 553 or 605 and would result in double recovery." *J&J Sports Prods., Inc. v. Quattrocche*, Civil No. WMN-09-3420, 2010 WL 2302353, at *1 (D. Md. June 7, 2010) (citations omitted). Therefore, I suggest that this Court only consider whether Plaintiff may recover under Section 605.

**B. Damages**

*a)* **Plaintiff Should Recover the Minimum $1,000 in Statutory Damages**

While actual damages are available under Section 605, Plaintiff has requested statutory

damages.  In awarding statutory damages, this Court has discretion to award Plaintiff between

"$1,000 and $10,000 for each unauthorized reception and publication of a radio communication

by [Defendant] in violation of section 605(a)." *Quattrocche*, 2010 WL 2302353, at *2; 47

U.S.C. § 605(e)(3)(C)(i)(II).  Courts in this Circuit have determined the proper measure of

damages by either: 1) multiplying a fee per person by "the number of patrons observed in the

defendant's establishment at the time the program was shown;" 2) multiplying a fee per person

by the maximum occupancy of the establishment; or 3) awarding a flat sum per violation.

*Quattrocche*, 2010 WL 2302353, at *2.

This Court has utilized the first approach where the defendant charged patrons a "cover

charge." *See, e.g., Rumors*, 2014 WL 6675646, at *3; *Quattroche*, 2010 WL 2302353, at *2.

This Court has utilized the third approach—the flat sum—where a plaintiff has provided

"evidence" of the amount "the Defendant[] would have had to pay . . . to legally obtain and

exhibit the broadcast." *J&J Sports Prods., Inc. v. Royster*, Civil No. RWT-11-1597, 2014 WL

992779, at *4 (D. Md. Mar. 13, 2014).  Here, Defendant did not charge a cover charge.

Coleman Aff. 1.  Plaintiff also has not indicated that Defendant charged other fees for viewing.

The first two approaches for calculating damages therefore do not seem appropriate.  As to the

third approach, while Plaintiff did provide a rate card which might show the amount Defendant

would have had to pay to show the program, Plaintiff did not attest, under penalty of perjury, that

the rate card was related to the contract Plaintiff entered into when it purchased the distribution

rights to the Program.  Rate Card for the Program, ECF No. 12-4 (the "Rate Card").  As such, I

do not believe this Court can rely on the Rate Card to determine the proper measure of damages.

Given Plaintiff's failure to provide evidence with sufficient indicia of trustworthiness, I suggest

this Court award Plaintiff the statutory minimum of $1,000.[1]

### b)     The Statutory Damages Should be Multiplied by Two

Plaintiff has also requested enhanced damages under Section 605 which authorizes "the

court in its discretion . . . [to] increase the award of damages . . . by an amount of not more than

$100,000 for each violation" of the provision.  47 U.S.C. § 605(e)(3)(C)(ii).  "In determining

whether enhanced damages are warranted, other courts in this Circuit have looked to several

factors, including: 1) evidence of willfulness; 2) repeated violations over an extended period of

time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an

admission fee or charging premiums for food and drinks." *Royster*, 2014 WL 992779, at *4

(citation omitted).  Even when "there are no allegations of repeat behavior or other factors

suggesting egregious willfulness, [c]ourts generally award around three to six times the statutory

damages award in enhanced damages." *Id.*

Here, there is evidence of willfulness—Defendant was playing the Program on its

television screens without having obtained authorization to do so.  However, there is no evidence

that Defendant has repeatedly violated Section 605 for monetary gain; advertised the broadcast;

or charged an admission fee or premium.  Given that Defendant's televisions were showing both

a basketball game and the Program, and that the record suggests that there were just over one

hundred patrons present (approximately half of the establishments capacity), there is also no

evidence of substantial monetary gain from showing the Program alone.  Because Defendant's

---

[1] Should the Court disagree with the undersigned's assessment of the evidence that should be considered it might award Plaintiff statutory damages equal to the amount Defendant would have paid to legally obtain the right to show the Program.  Mr. Coleman estimated that the maximum capacity of the establishment was 215 people. According to the Rate Card, an establishment that holds 200-300 people would have been required to pay $6,200 to show the Program.  Rate Card 1.

conduct only satisfies one of the four enhanced damages factors, I believe that in this case, there is no evidence of egregious willfulness.

Still, I believe some enhancement is warranted. Such an enhancement would help compensate Plaintiff for additional lost profits which are difficult to calculate.[2] It would also compensate Plaintiff for the additional time and money spent to discover and document Defendant's violation of Section 605.[3] Finally, it would deter future violations of Section 605 by encouraging establishments to pay for the legitimate rights to broadcast programs. Absent any reason to sanction Plaintiff, I believe multiplying the statutory award by three times would be appropriate.

However, Plaintiff has been admonished repeatedly that it is "not eligible to recover the maximum damages authorized by statute" where there is only evidence of "non-egregious willfulness;" and that it cannot "recover damages under section 553, section 605, and conversion for the same conduct." *Rumors*, 2014 WL 6675646, at *4 (describing previous admonitions by this Court and reducing Plaintiff's enhanced damages award "in light of [Plaintiff's] recalcitrance"). Yet, Plaintiff once again has claimed damages under Sections 553 and 605 as well as a theory of conversion. Plaintiff habitually seeks the statutory maximum amounts despite the lack of any evidence of egregious willfulness. As such, I recommend reducing the damages enhancement multiplier from three to two and awarding Plaintiff $2,000.

---

[2] As Plaintiff points out, when unauthorized establishments show programs that they do not have the right to show, establishments that have purchased the rights to these programs lose customers. This may deter legitimate businesses from purchasing future programs and rob plaintiffs in Section 605 cases from future customers.

[3] In this case, Plaintiff had to hire a private investigator, file a lawsuit, and pursue the present motion.

## IV.     Conclusion

For the foregoing reasons, it is my recommendation that the Court **GRANT** Plaintiff's

Motion and order Defendant to pay Plaintiff $2,000 for Defendant's violations of Section 605.

May 19, 2015                                                     /s/
                                                        Charles B. Day
                                                        United States Magistrate Judge

CBD/sdh